UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MARTIN O'BOYLE and
SHEILA O'BOYLE,

    Plaintiffs,

v.                                            CIVIL ACTION NO.   5:19-cv-445

STATE FARM FIRE & CASUALTY CO.,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending are Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. 64], and Plaintiffs' Motion for Summary Judgment [Doc. 84]. The matter is ready for adjudication.

**I.**

This declaratory judgment action involves a November 30, 2014, loss suffered by Martin and Sheila O'Boyle ("the O'Boyles") for which they seek coverage under an insurance policy with Defendant State Farm Fire and Casualty Company ("State Farm"). The O'Boyles are Florida citizens who also own a residence in Greenbrier County. The subject policy contains "Loss of Use" coverage in the event of damage to the residence, providing in pertinent part:

> Additional Living Expense. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (3) 24 months.

Coverage C – Loss of Use [Doc. 64-7].

On November 30, 2014, a chandelier in the great room of the Greenbrier County residence fell and damaged the main floor. On December 8, 2014, a State Farm representative inspected the residence. The representative noted in his repair estimate that a portion of steps on the main level stairway required replacement. This would require temporarily bracing the loft balcony and removing and reinstalling the kitchen facilities. The parties ultimately arrived at a repair and loss of contents settlement of $242,069.68. On May 2, 2016, State Farm tendered the final payment to the O'Boyles. As of the date of filing, the O'Boyles had not yet commenced repairs. The parties agree that the residence is habitable in its current condition.

On June 11, 2019, the O'Boyles instituted this action. On August 24, 2020, State Farm moved for summary judgment [Doc. 64]. On October 30, 2020, the O'Boyles moved for summary judgment [Doc. 84].

State Farm asserts summary judgment is appropriate as "the O'Boyles are not entitled to coverage for additional living expense while contractors replace the prefinished wood flooring in their West Virginia house." [Doc. 65 at 5]. First, State Farm contends that no reasonable juror could find the residence "uninhabitable." During the repairs, the O'Boyles will have access to the lower level of the residence. The lower level is accessible by a separate exterior door. It includes the master suite, laundry facilities, and a kitchenette equipped with a refrigerator, freezer, dishwasher, and wine refrigerator. In 2017, the lower level was appraised at $966,412.

The O'Boyles respond that the property will unquestionably be "uninhabitable" during repair. They rely primarily on their inability to access the kitchen on the main floor and dust accumulation during the repairs. They note the challenge of meal preparation as the lower

2

level lacks a stove or oven. State Farm has, however, offered to pay for additional meal expenses incurred when the O'Boyles visit West Virginia during repairs.

State Farm also challenges the O'Boyles' claim for additional living expense coverage ("ALE") if the home is deemed "uninhabitable." ALE covers the O'Boyles' "necessary increase in cost" to maintain their standard of living. State Farm asserts the O'Boyles' three additional homes and primary residence outside West Virginia indicate they will not incur any ALE. The O'Boyles counter this contention. By example, Mr. O'Boyle has testified he lived at the West Virginia residence "more than [his] . . . home in Florida." [Doc. 64-1 at 26].

In their cross-motion, the O'Boyles contend the word "uninhabitable" is ambiguous and construed against State Farm. They note the experts' inabilities to articulate a standard definition. Mr. Jack Boekhout points to the State Building Code for guidance but does not formulate a definition. Mr. Lee Martin finds the degree of intrusion of the repairs important in determining habitability, but he also does not formulate a definition. Ms. Karen Leonard, State Farm's claim representative, states that "uninhabitable" is a commonsense term but that one person's common sense could differ from another's. The O'Boyles additionally urge that the term requires an analysis of individual characteristics with an eye toward the reasonable use of the premises. They contend the residence is "uninhabitable" inasmuch as it cannot be reasonably used during repairs. State Farm counters that "uninhabitable" is unambiguous.

Respecting ALE, the O'Boyles contend they are entitled to rent premises of a character equivalent to the insured premises. They desire to reside in the Presidential Suite of the Greenbrier Resort during repairs. In response, State Farm reiterates its earlier stated ALE argument.

## II.

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

When faced with cross-motions for summary judgment, the Court applies the above standard and must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

When the principles of summary judgment are applied to contract interpretation, "only an unambiguous writing justifies summary judgment without resort to extrinsic evidence." *Goodman v. Resol. Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) (citing *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)). "If a court properly determines that the contract is unambiguous on the dispositive issues, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Id*. On the other hand, where a court deems the contract ambiguous, a court may "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis." *Washington Metro. Area Transit Auth. v. Potomac Inv. Prop., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (citing *Goodman*, 7 F.3d at 1126). However, if such extrinsic evidence "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id*.

### III.

The pending cross-motions raise three fundamental questions: (1) is "uninhabitable" ambiguous, (2) if so, what does the term mean, and (3) if uninhabitability exists, what, if any, ALE coverage inures to the O'Boyles?

**A.     The Ambiguity and Meaning of "Uninhabitable"**

#### 1.  Standard

5

West Virginia law governs the policy's interpretation. The Supreme Court of Appeals of West Virginia has explained that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999); *see also Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253 (4th Cir. 2005). A contract is ambiguous when the language is "reasonably susceptible of two different meanings," or "the reasonable minds might be uncertain or disagree as to its meaning." Syl. pt. 4, *Est. of Tawney v. Columbia Nat. Res., LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006). If "the contract is ambiguous, then extrinsic evidence may be consulted to discern what the parties intended the rights and obligations of the agreement to include." *Covol Fuels No. 4, LLC v. Pinnacle Mining Co., LLC*, 784 F.3d 104, 112 (4th Cir. 2015). "The determination of intent through extrinsic evidence become[s] a question of fact," rather than a question of law. *Id*. (citing *Payne v. Weston*, 195 W. Va. 502, 466 S.E.2d 161 (1995)). On the other hand, "if the contract is unambiguous, then the court should enforce its terms according to the plain and natural meaning of the language used without considering extrinsic evidence." *Id.*

### 2. Analysis

The State Farm Operation Guide notes the following:

> Uninhabitability relates to the health and safety of the insured or other occupants and may differ from one person to the next. Uninhabitability may depend upon the season, climate, and individuals involved. Uninhabitability may depend upon some other factors such as inaccessibility on the residence premises caused by a loss covered by the policy.

[Doc. 84-11 at 1].

As noted, certain experts in this matter disagree on the meaning of the term as well. These considerations and others suggest "uninhabitable" is reasonably susceptible of at least two different meanings and that reasonable minds are uncertain and disagree as to its meaning. As such, "uninhabitable" is an ambiguous term.

Although the Court does not finally adjudicate whether the term is susceptible of a Court-defined meaning as a matter of law, it is noted that the *Merriam-Webster Dictionary of Law* defines "uninhabitable" as "unfit for habitation." *uninhabitable*, *Merriam-Webster's Dictionary of Law* (2d ed. 2016); *see, e.g. American Heritage Dictionary of the English Language*; *Webster's New World College Dictionary*.

At this point in the proceedings, it is sufficient to note that a genuine issue of material fact remains, which may or may not be resolved as a matter of law following the complete development of the evidentiary record at trial.

**B.     Additional Living Expense**

Pending the adjudication or finding respecting uninhabitability, summary judgment is likewise inappropriate at this point on the O'Boyles' putative entitlement to, and the amount of, ALE.

**IV.**

Based on the foregoing, the Court **ORDERS** that the parties' cross-motions for summary judgment [Docs. 64, 84] be **DENIED**. The matter will proceed to trial.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTERED: December 21, 2020

Frank W. Volk
United States District Judge